1  Josephine Bistline ID# ███ 5159851O
2  C/o: Central Arizona Florence Correction Center
   1155 N. Pinal Pkwy Ave. ~ P.O. Box 6300
3  Florence, Arizona 85132

4  Pro Se

```
                    ┌──────────────────────────┐
                    │ X  FILED        LODGED   │
                    │ __ RECEIVED  __ COPY     │
                    │                          │
                    │    SEP 1 1 2023          │
                    │ CLERK U S DISTRICT COURT │
                    │  DISTRICT OF ARIZONA     │
                    │ BY              DEPUTY   │
                    └──────────────────────────┘
```

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE  L R Cv P S .M
                    (Rule Number/Section)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America[1], Plaintiff in Error,<br><br>Plaintiff,<br><br>v.<br><br>Josephine Bistline Bateman(not as STRAWMAN/Strawman),<br>the Defendant in error,<br><br>Defendant. | Case No. <u>22-cr-08092-SMB</u><br><br>**DEFENDANT JOSEPHINE BISTLINE BATEMAN MOTION TO DISMISS ALL, COMPLAINTS, AND INDICTMENTS AGAINST HER WITH PREJUDICE**<br><br>(Fed. Rule of Crim.Proc. 12(b) et seq)<br><br>Trial March 05, 2024.<br>Time: 09:00 A.M.<br><br>Judge: ███ Susan M. Brnovich |

## DEFENDANTS MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS

---

[1] **UNITED STATES OF AMERICA.** The nation occupying the territory between British America [Canada] on the north, Mexico on the south, the Atlantic Ocean and Gulf of Mexico on the east, and the Pacific Ocean on the west; being the republic whose organic law is the constitution adopted by the people of the thirteen states which declared their independence of the government of Great Britain on the fourth day of July, 1776. (<u>A LAW DICTIONARY, ADAPTED TO THE CONSTITUTION AND LAWS OF THE UNITED STATES OF AMERICA AND OF THE Seberal States of the American Union: with reference to the Civil and other systems of Foreign Law</u>, By John Bouvier, 14th Ed. Revised and Greatly Enlarged. Vol. II, pg. 622. Col. 1) [Seberal and old English font in original]

**UNITED STATES OF AMERICA.** The republic whose organic law is the constitution adopted by the people of the thirteen states which declared their independence of the government of Great Britain on the fourth day July, 1776. (<u>BOUVIER'S LAW DICTIONARY AND CONCISE ENCYCLOPEDIA</u> 8th Ed. (1914) Vol. III, pg. 3370, col. 2)

**UNITED STATES OF AMERICA.** The United States of America are a corporation endowed **with the capacity to sue and be sued, to convey and receive property.** <u>1 Marsh. Dec. 177, 181 (1811)</u>. (Bouvier's Law Dictionary, (1856) Vol. II, pg. 613, col. 1)

- 1 - of 40

# I.   TABLE OF CONTENTS

I.   TABLE OF CONTENTS.................................................................................2

II.   TABLE OF AUTORITIES ...........................................................................3

III.   INTRODUCTION .......................................................................................7

  1st COMPLAINT-2:23-mj-04056-CDB, Doc. 3 .............................................7

    Count 1 ...............................................................................................................7

    Count 2 ...............................................................................................................7

  1st INDICTMENT- 2:23-cr-00517-DLR, (Doc. 12 .......................................8

  2nd INDICTMENT ...........................................................................................9

  Synopsis ...........................................................................................................11

IV.   III. VENUE FACTS....................................................................................15

V.   IV. JURISDICTION FACTS........................................................................17

VI.   ARGUMENT ..............................................................................................20

  Indictment Fails on Many Points—(FRCrP § 12 et seq.) ...............................20

  THE UNITED STATES OF AMERICA LACKS STANDING—Failure to State an Offense—(FRCrP § 12(a)((3)(B)(v) ..................................................21

  UNITED STATE OF AMERICA, AMENDMENT VI—Improper Venue—(FRCrP § 12(a)((3)(A)(i)) .................................................................................22

  NO CRIMINAL JURISDICTION ..................................................................25

  NO FEDERAL-QUESTION JURISDICTION—Lacks Jurisdiction—(FRCrP § 12(b)(2) ..... 25

  COUNT 54-Violation Title 18, United State Code 875(c) ............................26

  COUNT 55-Violation Title 18, United States Code § 2261A(2) and 2261(b) .........................32

VII.   POINTS AND AUTHORITIES .................................................................33

VIII.   CONCLUSION ........................................................................................38

IX.   PRAYER....................................................................................................38

X.   VERIFICATION ..........................................................................................40

DEFENDANT'S MOTION TO DISMISS         CASE NO. 22-CR-08092-SMB

## II.    TABLE OF AUTORITIES

Cases

1 Marsh. Dec. 177, 181 (1811) ........................................................................ 1

11 Cush. Mass. 328 ................................................................................... 26

Arizona v. Manypenny, 445 F.Supp. 1123 (D.Ariz. 1977) ......................... 35

Balzac v. Porto Rico .................................................................................. 21

Balzac v. Porto Rico (1922) ........................................................................ 24

Boumediene et al. v. Bush, President of the United States, et al. ............... 21

Bouvier's Law Dictionary, (1856) Vol. II, pg. 613, col. 1 ........................... 1

Bowen v. Johnston (1939) 306 U.S. 19, 22 ................................................. 38

Caha v. U.S. (1894) 152 U.S. 211, 215 ....................................................... 37

Caha v. U.S., 152 U.S. 211, 213 (1894) ...................................................... 29

Gov't of Canal Zone v. Burjan, 596 F.2d 690, 694 (5th Cir. 1979) ............. 37

Kitchens v. Steele ...................................................................................... 19

Krull v. United States, 5 Cir. 1957, 240 F.2d 122, 127 ............................... 37

Legal Tender Cases (1870) 79 U.S. 457, 535–536 ...................................... 39

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) ............................. 31

Manchester v. Massachusetts (1891) 139 U.S. 240 ..................................... 36

Marshall v. Marshall, 547 U.S. 293, 298 .................................................... 36

Mookini v. United States (1938) ................................................................. 24

People v. Collins (1895) 105 Cal. 504 ......................................................... 36

People v. Welch, 141 N. Y. 266-277 ............................................................ 35

Pollard v. Hagan (1845) 44 U.S. 212, 223 .................................................. 38

Sexton v. People of State of California, 189 U.S. 319, 324 (1903) ............... 36

U. S. Comp. Stat. 1901, p. 2219 .................................................................. 35

U.S. v. Bateman (C.C.N.D. Cal. 1888) ........................................................ 37

U.S. v. Benson (5th Cir. 1974) 495 F.2d 475, 481 ....................................... 38

DEFENDANT'S MOTION TO DISMISS                    CASE NO. 22-CR-08092-SMB

U.S. v. Cecil, 608 F.2d 1294, 1297 (9th Cir. 1979)................................................29

U.S. v. Spelar (1949) 338 U.S. 217, 222 ................................................36

U.S. v. White (5th Cir. 1980) 611 F.2d 531, 536................................................37

United States v. Benson, 495 F.2d 475, 481 (5th Cir.) ................................................37

United States v. McBratney, 104 U.S. 621, 26 L. Ed. 869 (1881) ................................................35

United States v. Watson, 80 F. Supp. 649 (E.D.Va., 1948)................................................36

United States v. Worrall ................................................19

**Statutes**

18 U.S.C. § 7 ................................................25

18 U.S.C.A. § 2261 ................................................34

18 U.S.C.A. § 3231 (West) ................................................25

18 U.S.C.A. § 7 (West) ................................................20

18 U.S.C.A. § 875(c) (West) ................................................27

28 U.S.C. §§ 1331, 1332 ................................................21

28 U.S.C.A. § 1331 (West) ................................................26

28 U.S.C.A. § 82 (West) ................................................24

Ariz. Rev. Stat. Ann. § 13-109................................................17, 18

Fed. R. Crim. P. 7 ................................................28

FRCrP § 12(a)((3)(B)(iii ................................................27

FRCrP §12(b)(3)(A)(iii) ................................................30

Title 18 U.S.C. § 2261 ................................................33

Title 18 U.S.C. § 7 ................................................17, 22, 29

Title 18 U.S.C. § 875(c) ................................................27

Title 18 U.S.C. § Section 875(c) ................................................30

Title 28, U.S.C. § 83 ................................................24

U. S. Comp. Stat. 1901, p. 507 ................................................35

**U. S. Comp. Stat. 1901**, p. 577 ................................................35

DEFENDANT'S MOTION TO DISMISS                    CASE NO. 22-CR-08092-SMB

**Other Authorities**

https://en.wikipedia.org/wiki/List_of_counties_in_Arizona ............................................. 24

https://thelawdictionary.org/united-states/ .............................................................. 20

https://uscode.house.gov/browse/prelim@title18&edition=prelim ............................................. 20

https://wearechange.org/u-s-supreme-court-says-no-license-necessary-to-drive-automobile-on-
 public-highwaysstreets/ ............................................................................... 22

https://www.oyez.org/cases/1989/88-1353 ..................................................................... 20

The District was established on June 20, 1910, **pending Arizona statehood** on February 14,
 1912 ................................................................................................... 29

**Rules**

(FRCrP § 12(a)((3)(B)(iii) ................................................................................. 32

FRCP Rule 1 .................................................................................................. 35

FRCrP § 4(b) (1)(C) .......................................................................................... 16

FRCrP § 7 ................................................................................................... 30

FRCrP §12(b)(3)(B)(iii, v) ................................................................................... 30

FRCrP §12(b)(3)(B)(v) ........................................................................................ 31

FRCrP 12(b)(3)(A)(i), (iv) ................................................................................... 34

FRCrP 12(b)(3)(B)(iii) ....................................................................................... 34

FRCrP 5(a)(1)(A) ............................................................................................. 16

**Constitutional Provisions**

U.S. Const. amend. VI ........................................................................................ 23

U.S.C.A. § DECLARATION OF INDEPENDENCE (West) .............................................................. 23

**Dictionaries**

A LAW DICTIONARY, ADAPTED TO THE CONSTITUTION AND LAWS OF THE
 UNITED STATES OF AMERICA ................................................................................... 1

ACCUSER, Black's Law Dictionary (11th ed. 2019) ............................................................ 33

Black's Law Dictionary 4th ed., (1968) ...................................................................... 24

Defendant's Motion to Dismiss                    Case No. 22-cr-08092-SMB

Bouvier Law Dictionary, (1856) VOL. II, pg. 124......................................................................31

BOUVIER'S LAW DICTIONARY AND CONCISE ENCYCLOPEDIA .......................................1

COMMERCE, Black's Law Dictionary (11th ed. 2019) ..........................................................28

EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS, Black's Law Dictionary (11th ed. 2019) . 26

FEDERAL QUESTION, Black's Law Dictionary (11th ed. 2019) ...........................................26

https://en.wikipedia.org/wiki/United_States_District_Court_for_the_District_of_Arizona........29

https://idioms.thefreedictionary.com/you+rot+in+hell ..........................................................32

https://www.urbandictionary.com/define.php?term=Butthurt...............................................31

JURISDICTION, Black's Law Dictionary (11th ed. 2019) ......................................................17

JURISDICTION, Black's Law Dictionary, (11th ed. 2019) .....................................................18

MENS REA, Black's Law Dictionary (11th ed. 2019) ...........................................................32

PLEA IN BAR, Black's Law Dictionary (11th ed. 2019) ..................................................27, 28

RIGHTEOUS, https://en.wikipedia.org/wiki/Righteous_indignation .....................................33

TERRITORY OF A JUDGE, Black's Law Dictionary (11th ed. 2019) ....................................18

VENUE, Black's Law Dictionary 6th ed., (1990) .................................................................16

Webster's Twentieth-Century Dictionary, (1939) ...............................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S MOTION TO DISMISS                    CASE NO. 22-CR-08092-SMB

1  Defendant in error, files this motion to dismiss "CRIMINAL COMPLAINT" Doc. 3,

2  [2:23-mj-04056-CDB] the sham "INDICTMENT", Doc. 12, [2:23-cr-00517-DLR] previously

3  dismissed (without prejudice) Doc. 58, and "SECOND SUPERSEDING INDICTMENT" Doc.

4  104, (3:22-cr-08092-SMB) for territorial and subject-matter jurisdiction issues, impermissible

5  selective and malicious prosecution stemming from a disgruntled mother and father of three

6  wives with a vendetta, against Samuel Bateman, and supported by Dawn A. Martin the

7  "Complainant" [Doc. 3] by a rogue FBI agent.

8  This instant Motion to Dismiss is under Federal Rule of Criminal Procedure 12(b) et seq.

9  ### III.    INTRODUCTION

10  **Plaintiff in error** is the United States of America. (*RE "Plaintiff in error" more to be*

11  *discussed in NO FEDERAL CRIMINAL JURISDICTION section infra*)

12  Moving party and Defendant in error is Josephine Barlow Bistline, a.k.a., Josephine

13  Bateman[2].

14  Plaintiff in error (USA), alleged to have brought a criminal action against the defendant in a

15  two Count "CRIMINAL COMPLAINT" and separate defective sham INDICTMENTS for

16  alleged violations of Federal Law codes:

17  **1st COMPLAINT-2:23-mj-04056-CDB, Doc. 3**

18  **Count 1**

19  "On or about March 24, 2023, in the District of Arizona and elsewhere, the
20  defendant, JOSEPHINE BARLOW BISTLINE, a.k.a. JOMIE B., did knowingly
   and willfully transmit in interstate and foreign commerce a threat to injure the
21  person of another: to wit, the defendant sent an electronic mail communication
   threatening to injure and harm C.B.

22  In violation of Title 18, United States Code, Section 875(c)."

23  **Count 2**

24  "Beginning on or about December 16, 2022 and continuing until on or about
   March 24, 2023, in the District of Arizona and elsewhere, the defendant,
25  JOSEPHINE BARLOW BISTLINE, a.k.a. JOMIE B., with the intent to injure,
   harass, and intimidate another person, used any interactive computer service and
26  electronic communication service and electronic communication system of

27  

28  [2] On May 3rd, 2023, in a motion hearing before Judge David Campbell, Josephine identified herself as Josephine
Bateman.

DEFENDANT'S MOTION TO DISMISS                    CASE NO. 22-CR-08092-SMB

interstate commerce, and any other facility of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would reasonably have been expected to cause substantial emotional distress to C.B. and L.B., and placed C.B. and L.B. in reasonable fear of serious bodily injury.

In violation of Title 18, United States Code, Sections 2261A(2) and 2261(b)."

This de facto complaint was signed by Dawn A. Martin a "Special Agent, Federal Bureau of Investigation as Complainant. It also purports to be signed "sworn before" Camille D. Bibles and digitally signed by both.

Respectfully submitted

DAWN MARTIN  Digitally signed by DAWN MARTIN
Date: 2023.03.24 21:05:10 -07'00'

Dawn A Martin
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this __24th__ of March, 2023.

Camille D Bibles  Digitally signed by Camille D Bibles
Date: 2023.03.24 21:45:01 -07'00'

Hon. Camille D. Bibles
United States Magistrate Judge

1st INDICTMENT- 2:23-cr-00517-DLR, (Doc. 12

**Count 1**

On or about March 24, 2023, in the District of Arizona and elsewhere, the defendant, JOSEPHINE BARLOW BISTLINE, a.k.a. JOMIE B., did knowingly and willfully transmit in interstate and foreign commerce a threat to injure the person of another: to wit, the defendant sent an electronic mail communication threatening to injure and harm C. B.

In violation of Title 18, United States Code, Section 875(c)."

**Count 2**

Beginning on or about December 16, 2022 and continuing until on or about March 24, 2023, in the District of Arizona and elsewhere, the defendant, JOSEPHINE BARLOW BISTLINE, a.k.a. JOMIE B., with the intent to injure,

DEFENDANT'S MOTION TO DISMISS                    CASE NO. 22-CR-08092-SMB

harass, and intimidate another person, used any interactive computer service and electronic communication service and electronic communication system of interstate commerce, and any other facility of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause and would reasonably have been expected to cause substantial emotional distress to C. B. and L. B, and placed C. B. and L. B. in reasonable fear of serious bodily injury.

In violation of Title 18, United States Code, Sections 2261A(2) and 2261(b).

A TRUE BILL

_S/_
FOREPERSON OF THE GRAND JURY
Date:  April 4, 2023

GARY M. RESTAINO
United States Attorney
District of Arizona

_S/_
JILLIAN BESANCON
LINDSAY L. SHORT
Assistant U.S. Attorneys

*Figure 3 (2:23-cr-00517-DLR, Doc. 12. pg 2)*

# 2nd INDICTMENT[3]

## Count 54

326. On or about March 24, 2023, in the District of Arizona and elsewhere, the defendant, JOSEPHINE BARLOW BISTLINE, did knowingly and willfully transmit in interstate and foreign commerce a threat to injure the person of another: to wit, the defendant sent an electronic mail communication threatening to injure and harm C.B.
327. In violation of Title 18, United States Code, Section 875(c).

---

[3] For the point of this Motion to Dismiss (in order to save space) the other counts, are in summary form as follows:
Count 11, § 183. In violation of Title 18, United States Code, Sections 2251(a), (e), 2256, and 2.
Count 13, § 189. In violation of Title 18, United States Code, Sections 1470 and 2.
Count 17, § 201. In violation of Title 18, United States Code, Sections 2422(b) and 2.
Count 26, § 228. In violation of Title 18, United States Code, Sections 2422(a) and 2.
Count 27, § 231. In violation of Title 18, United States Code, Sections 2422(b) and 2.
Count 28, § 234. In violation of Title 18, United States Code, Sections 2423(a) and 2.
Count 30, § 240. In violation of Title 18, United States Code, Sections 2422(a) and 2.
Count 31, § 243. In violation of Title 18, United States Code, Sections 2422(b) and 2.
Count 32, § 246. In violation of Title 18, United States Code, Sections 2423(a) and 2.
Count 54, § 327. In violation of Title 18, United States Code, Section 875(c).
Count 55, § 330. In violation of Title 18, United States Code, Sections 2261A(2) and 226l(b).
Count 56, § 333. In violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

DEFENDANT'S MOTION TO DISMISS                                    CASE NO. 22-CR-08092-SMB

**Count 55**

329. On or between December 16, 2022 and March 24, 2023, in the District of

Arizona and elsewhere, the defendant, JOSEPHINE BARLOW BISTLINE, with the intent to injure, harass, and intimidate another person, used any interactive computer service and electronic communication service and electronic communication system of interstate commerce, and any other facility of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause and would reasonably have been expected to cause substantial emotional distress to C.B. and L.B., and placed C.B. and L.B. in reasonable fear of serious bodily injury.

330. In violation of Title 18, United States Code, Sections 2261A(2) and 2261(b).We have several conundrums[4] in deciding what to believe.

A TRUE BILL

/S

FOREPERSON OF THE GRAND JURY
Date: May 18, 2023

GARY M. RESTAINO
United States Attorney
District of Arizona

/S

DIMITRA H. SAMPSON
JILLIAN BESANCON
LINDSAY L. SHORT
Assistant U.S. Attorneys

*Figure 4-(3:22-cr-08092-DGC, pg. 56)*

➢ Was there EVER a valid arrest warrant to arrest?

➢ Was there **ever** a Grand Jury sworn, in open Court the case?

➢ What venue were the Grand Juror's summoned from?

➢ How many Grand Jurors were impaneled?

➢ Who were the witnesses called before the Grand Jury?

➢ Who was the Grand Jury Foreman, did he appear in open court to file either of the Indictment?

➢ On March 24, 2023, the sham COMPLAINT was sworn, signed, and witnessed by a Magistrate and filed on the same day! Hummmm? (U.S.D.C.D.A, Case #23-4056 MJ CDB, Doc. 3)

---

[4] **Conundrum.** co•nun•drum /kə'nʌndrəm/ *n.* [countable] Gamesa riddle whose answer involves a pun. anything that puzzles. (conundrum - WordReference.com Dictionary of English)

> ➤ The INDICTMENT was signed and filed April 04, 2023, signed S/_____ FOREPERSON OF THE GRAND JURY on April 4, 2023, in open court? (U.S.D.C.D.A, Case #2:23-cr-00517-DLR, Doc. 12)

> ➤ The SECOND SUPERCEDING INDICTMENT was signed S/_____ FOREPERSON OF THE GRAND JURY by the same Foreperson of the Grand Jury in the **** SAME **** as the first "INDICTMENT."

## Synopsis

Josephine Bistline Bateman, (a.k.a. Jomie Bateman) is being persecuted for her religious beliefs. Samuel Bateman and Josephine are avid followers of Joseph Smith and the principles revealed to him by God. According to the FBI, Josephine is alleged to be a victim, <u>which begs the question, why is Josephine in prison</u>?

Samuel, Josephine, and family are being persecuted for their religious beliefs and the right to speak freely their own opinions protected by the Fourteenth and First Amendments.

This is sham criminal INDICTMENT involves a **FAMILY** that has selectively been singled out and targeted for their religious belief and for speaking out against their persecutors that hold them illegally in prison. The Docket in the United States District Court, for the District of Arizona, Case No. 3:22-cr-08092-DGC U.S.A. v. Bateman et al. makes clear these folks are related to one another.

*Figure 5 (Pacer.gov, USDCA, Docket #3:22-cr--8092 et. al.)*

- 11 - of 40

CM  ECF   Query  Reports .  Utilities .  Help  Log Out

# Query

**WARNING: Search results from this screen are NOT subject to the on PACER charges. Please be as specific as possible with your s**

Search Clues                                                              Mobile Query

Case Number      22-08092        Hide Case List
                 Select a case:
                 3:22-mj-08092-JZB USA v. Pagan-Candelaria (closed 04/12/2022)
                 3:22-cr-08092-SMB USA v. Bateman et al
                   3:22-cr-08092-SMB-1 Samuel Rappylee Bateman
                   3:22-cr-08092-SMB-2 Naomi Bistline
                   3:22-cr-08092-SMB-3 Donnae Barlow
                   3:22-cr-08092-SMB-4 Moretta Rose Johnson
                   3:22-cr-08092-SMB-5 Josephine Barlow Bistline
                   3:22-cr-08092-SMB-6 LaDell Jay Bistline, Jr.
                   3:22-cr-08092-SMB-7 Brenda Barlow
                   3:22-cr-08092-SMB-8 Marona Johnson
                   3:22-cr-08092-SMB-9 Leia Bistline
                   3:22-cr-08092-SMB-10 Torrance Bistline
                   3:22-cr-08092-SMB-11 Leilani Barlow
                 3:22-cv-08092-MTL Kenzer v. Torel Building & Remodeling LLC et al (closed 05/01/2023)
                 or search by

As the screen capture (above) of the case information on Pacer.gov, the current Second

Superseding Indictment names eleven defendants. ALL are family, Mormons ▮▮▮▮▮▮▮ ▮

▮▮▮▮▮▮▮▮▮▮▮ closely related FAMILY! This FAMILY has been a target of religious

persecution[5] and Malicious prosecution[6] which is forbidden under; but not limited to the First

Amendment.

---

[5] **Persecution.** *n.* (14c) Violent, cruel, and oppressive treatment directed toward a person or group of persons because of their race, **religion, sexual orientation**, politics, or other beliefs. See hate crime under CRIME; WELL-FOUNDED FEAR OF PERSECUTION. — persecute, vb. (PERSECUTION, Black's Law Dictionary (11th ed. 2019))

[6] **Malicious prosecution.** (17c) 1. The institution of a criminal or civil proceeding for an improper purpose and without probable cause. • The tort requires proof of four elements: (1) the initiation or continuation of a lawsuit; (2) lack of probable cause for the lawsuit's initiation; (3) malice; and (4) favorable termination of the original lawsuit. Restatement (Second) of Torts §§ 674–81B (1977). 2. The tort claim resulting from the institution of such a proceeding. • Once a wrongful prosecution has ended in the defendant's favor, he or she may sue for tort damages. — Also termed (in the context of civil proceedings) malicious use of process; (archaically) malicious institution of civil proceedings. Cf. ABUSE OF PROCESS; VEXATIOUS SUIT; malicious defense under DEFENSE (2).

"Malicious prosecution — The action of, defined. — A judicial proceeding, instituted by one person against another from wrongful or improper motives, and without probable cause to sustain it. It is usually called a malicious prosecution; and an action for damages for being subjected to such a suit is called an action for malicious prosecution. In strictness, the prosecution might be malicious, that is, brought from unlawful motives, although founded on good cause. But it is well established that unless want of probable cause and malice concur no damages are recoverable. However blameworthy was the prosecutor's motives, he cannot be cast in damages if there was probable cause for the complaint he made. Hence, the term usually imports a causeless as well as an ill-intended

DEFENDANT'S MOTION TO DISMISS                          CASE NO. 22-CR-08092-SMB

TITLE 18 USC § 1091. GENOCIDE.

(a) Basic Offense. Whoever, whether in time of peace or in time of war and with the specific intent to destroy, in whole or in substantial part, a national, ethic, racial or religious group as such

(1) kills members of that group;

(2) causes serious bodily injury to members of that group;

(3) causes permanent impairment of the mental faculties of members of the group through drugs, torture, or similar techniques;

(4) subjects the group to conditions of life that are intended to cause the physical destruction of the group in whole or in part;

(5) imposes measures intended to prevent births within the group; or

(6) transfers by force children of the group to another group;

shall be punished as provided in subsection (b)

## (b) Punishment for Basic Offence —

The punishment for an offence under subsection (a) is — (1) in the case of an offence under subsection (a)(1) where death results, by death or imprisonment for life and a fine of not more than $1,000,000.00, or both; and

(2) a fine of not more than $1,000,000.00 or imprisonment for not more than 20 yrs., or both.

-13 of 40 ß

1       One of Samuel Bateman's wives was told by a witness that the FBI and their informants

2  had been planning this search and arrest for approximately 7 months previous.

3       All three were present at each location that was searched and pre-arranged the arrest of

4  Samuel Bateman.

5       The FBI took Samuel to the Coconino County Jail in Flagstaff, Arizona.

6       Samuel Bateman was later moved to federal custody in the Central Arizona Florence

7  Correctional Complex (CAFCC) and was denied bail.

8       On September 14th, 2022, nine of the Bateman family girls were taken into custody by

9  Arizona DCS.

10       On November 27th, 2022, after being lied to, forced, threatened to have court-ordered

11  visits with their mothers taken away, being denied the right to talk to their attorney, promises

12  made and broken by DCS supervisors and staff to the girls, and DCS Supervisor, [C.B.]

13  physically fighting with Jane Doe 8 [Josephine's daughter] in the group home, Jane Does 3, 4, 5,

14  7, 8, 9, 10, & 11 ran away.

15       Some of the Jane Does have been interrogated up to 10 times by FBI with lewd and

16  obscene questions.

17       DCS Staff showed one of the Jane Does sexual content depicting things she had never

18  heard of causing her to have nightmares.

19       Some of the Jane Does wrote letters to anyone they could begging for help to get them

20  home.

21       In December of 2022, three sisters were arrested for helping their sisters who had fled

22  from DCS.

23       On March 29th, 2023, Josephine, went to visit her friends at CAFCC, and while in the

24  waiting room, two men with no identifying uniforms or badges approached her and told her she

25  was under arrest.

26       Josephine asked to see the arrest warrant but was denied.

27

28

DEFENDANT'S MOTION TO DISMISS                  CASE NO. 22-CR-08092-SMB

When she insisted, they grabbed her and threw her to the ground, and arrested her. They were later identified as FBI agents. She was booked into CAFCC without being taken to a magistrate (FRCrP 5(a)(1)(A)).

## II.    STATUS

Josephine Bateman, is a woman over the age of majority, born June 17th, 1983. Her father was Moroni Barlow, and her mother was Josephine Holm Barlow. Both her mother and father were natural-born citizens; thus, Josephine Bateman is a natural-born citizen of Arizona.

Josephine Bateman has two daughters (captives) being held illegally and unjustly by the Arizona Department of Child Services (DCS)███████ The action taken by DCS was based on false and misleading hearsay information maliciously provided by Dawn A. Martin, Special Agent FBI and | C.M. |

DCS has WITHHELD ALL visits between Josephine with her daughters who cannot even have phone or video chat. This can be described only as cruel and unusual punishment without just cause (Amendment 8).

## IV.   III.   VENUE FACTS

Venue. Formerly spelled visne. In common law pleading and practice, a neighborhood; the neighborhood, place, or county in which an injury is declared to have been done, or fact declared to have happened. 3 Bl. Comm. 294. (VENUE, Black's Law Dictionary 6th ed., (1990) pg. 1557, col. 1) [Emphasis added]

The particular county, or geographical area, in which a court with jurisdiction may hear and determine a case. Venue deals with locality of suit, that is, with question of which court, or courts, of those that possess adequate personal and subject matter jurisdiction may hear the specific suit in question. (citations) It relates only to place where or territory within which either party may require case to be tried. (citations) It has relation to convenience of litigants and may be waived or laid by consent of parties. (citations) (VENUE, Black's Law Dictionary 6th ed., (1990) pg. 1557, col. 1)

As previously stated, Josephine was arrested at Central Arizona Florence Correction Complex (CAFCC), 1155 N. Pinal Pkwy Ave. Florence, Arizona 85232, while sojourning to visit other family members pre-trial detainees (captives) in CAFCC.

1    Josephine was arrested without a warrant as required (FRCrP 5(a)(1)(A)) by putative FBI

2    agents that refused to identify themselves, and refused to provide a copy of the warrant even

3    though she demanded a copy.

4    The instant action involves three related court dockets 1) 2:23-mj-04056-CDB, 2) 2:23-

5    cr-00517-SMB, and 3) 3:22-cr-08092-DGC [now SMB] none of the three cases have an arrest

6    warrant on file.

7    Further, the FBI agents failed to take Josephine to the Magistrate as required in the

8    Federal Rules of Criminal Procedure FRCrP § 4(b) (1)(C).

9    Neither of the putative officers wore uniforms or badges and they were acting OUTSIDE

10   the territorial boundaries of the United States, and WITHIN the territorial boundary of the state

11   of Arizona.

12   The situs , lex situs , or locus delicti  determines the venue (particular county) for the

13   district court and the venue from which the grand jury  or petit jury  is to be drawn. The Mohave

14   County Superior Court of Arizona at 415 E. Spring St., Kingman, Arizona 86401, is the proper

15   court for alleged criminal acts occurring within its jurisdiction.

16   The acts alleged to have been done were WITHIN one of the several states, including

17   Arizona, private travel for personal pleasure (non-commercial)  to Utah, and to Nebraska.

18   At the time of arrest Josephine had traveled WITHIN Arizona (not crossing any state

19   boundaries) to visit family at CoreCivic; thus, no facts exist that would place Josephine

20   OUTSIDE the territorial boundaries of Arizona and WITHIN the federal territory as set out in

21   Title 18 U.S.C. § 7, supra. The Arizona legislature set out the place of trial in a criminal matter in

22   the county.

23

24   A. Criminal prosecutions shall be tried in the county [Mohave] in which conduct

25   constituting any element of the offense or a result of such conduct occurred unless otherwise

26   provided by law. (Ariz. Rev. Stat. Ann. § 13-109)

27   Thus, the United States District Court of Arizona is the improper venue and trial court in

28   the instant action and Josephine and the Bateman family; thus, this is in want of jurisdiction.

DEFENDANT'S MOTION TO DISMISS                                        CASE NO. 22-CR-08092-SMB

# V.   IV.   JURISDICTION FACTS

Jurisdiction. n. (13c) 1. A government's [Arizona's ] general power to exercise authority over all persons and things within its territory; esp., a state's power to create interests that will be recognized under common-law principles as valid in other states ... 2. A court's power to decide a case or issue a decree ... Also termed (in sense 2) competent jurisdiction; (in both senses) coram judice; adjudicatory jurisdiction. (JURISDICTION, Black's Law Dictionary (11th ed. 2019))

All the relevant facts establish that all events were WITHIN the territorial jurisdiction of the County of Mojave, in the State of Arizona; thus, the prosecutor, in error, and the court are in want of jurisdiction.

On March 29th, 2023, Josephine was arrested (without a warrant) while peacefully visiting family members held captive, and put in the same gulag ▓▓▓▓▓▓▓ Samuel and family members were in.

Clearly, the acts alleged to have been done were committed WITHIN the state of Arizona; thus, under Arizona law, the Arizona legislature set out the place of trial in a criminal matter in the county.

A. Criminal prosecutions shall be tried in the county [Mojave] in which conduct constituting any element of the offense or a result of such conduct occurred, unless otherwise provided by law. (Ariz. Rev. Stat. Ann. § 13-109)

It is clear that the United States District Court of Arizona is the improper venue for the trial court. Clearly, the U.S. District Court is in want of jurisdiction. There are multiple elements of jurisdiction; however, for the sake of brevity and simplicity, we consider three herein:

1)   Subject Matter Jurisdiction. (1936) Jurisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things. — Also termed jurisdiction of the subject matter; jurisdiction of the cause; jurisdiction over the action; jurisdiction ratione materiae. Cf. personal jurisdiction. (JURISDICTION, Black's Law Dictionary, (11th ed. 2019)).

DEFENDANT'S MOTION TO DISMISS                    CASE NO. 22-CR-08092-SMB

2)    Territorial—State Jurisdiction. (18c) 1. The exercise of state-court authority. 2. A court's power to hear all matters, both civil and criminal, arising within its territorial boundaries. (JURISDICTION, Black's Law Dictionary, (11th ed. 2019))

3)    Territory of a Judge. (18c) The territorial jurisdiction of a particular court. See jurisdiction (3). (TERRITORY OF A JUDGE, Black's Law Dictionary (11th ed. 2019))

Ever since the case of United States v. Worrall, 2 Dall. 384, 2 U.S. 384, 1 L.Ed. 426, it has been universally recognized that Federal Courts have no common law jurisdiction in criminal cases. (Kitchens v. Steele, 112 F. Supp. 383, 386 (W.D. Mo. 1953)

Because of congressional territorial limits (of federal territories) regarding the criminal statutes or laws of the United States, the Court lacks subject-matter jurisdiction over Plaintiffs in error suits.

§ 7. Special maritime and territorial jurisdiction of the United States defined

The term "special maritime and territorial jurisdiction of the United States", as used in this title, includes:

(1) The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States **and out of the jurisdiction of any particular State**.

(2) Any vessel registered, licensed, or enrolled under the laws of the United States, and being on a voyage upon the waters of any of the Great Lakes, or any of the waters connecting them, or upon the Saint Lawrence River where the same constitutes the International Boundary Line.

(3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

(4) Any island, rock, or key containing deposits of guano, which may, at the discretion of the President, be considered as appertaining to the United States.

(5) Any aircraft belonging in whole or in part to the United States, or any citizen thereof, or to any corporation created by or under the laws of the United States, or any State, Territory, district, or possession thereof, while such aircraft is in flight over the high seas, or over any other waters within the admiralty and maritime

jurisdiction of the United States and **out of the jurisdiction of any particular State**.

(6) Any vehicle used or designed for flight or navigation in space and on the registry of the United States pursuant to the Treaty on Principles Governing the Activities of States in the Exploration and Use of Outer Space, Including the Moon and Other Celestial Bodies and the Convention on Registration of Objects Launched into Outer Space, while that vehicle is in flight, which is from the moment when all external doors are closed on Earth following embarkation until the moment when one such door is opened on Earth for disembarkation or in the case of a forced landing, until the competent authorities take over the responsibility for the vehicle and for persons and property aboard.

(7) Any place outside the jurisdiction of any nation with respect to an offense by or against a national of the United States.

(8) To the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States.

(9) With respect to offenses committed by or against a national of the United States as that term is used in section 101 of the Immigration and Nationality Act--

(A) the premises of United States diplomatic, consular, military or other United States Government missions or entities in foreign States, including the buildings, parts of buildings, and land appurtenant or ancillary thereto or used for purposes of those missions or entities, irrespective of ownership; and

(B) residences in foreign States and the land appurtenant or ancillary thereto, irrespective of ownership, used for purposes of those missions or entities or used by United States personnel assigned to those missions or entities.

Nothing in this paragraph shall be deemed to supersede any treaty or international agreement with which this paragraph conflicts. This paragraph does not apply with respect to an offense committed by a person described in section 3261(a) of this title.

(18 U.S.C.A. § 7 (West))

Further While the terms "United States of America" and "United States" are often used interchangeably in legal contexts, there are some legal sources that provide definitions or distinctions between the two.

For example, Black's Law Dictionary defines "United States" as the federal government of the US and "United States of America" as one of the current names of the country. (https://thelawdictionary.org/united-states/).

In some cases, federal statutes use the term "United States of America" explicitly when referring to the country or the federal government. For instance, Title 18 of the United States Code defines numerous criminal offenses and provides specific penalties where appropriate,

1  often using the term "United States of America" throughout the text.

2  (https://uscode.house.gov/browse/prelim@title18\&edition=prelim).

3      In the case of United States v. Verdugo-Urquidez, the Supreme Court held that the Fourth

4  Amendment only applies to searches and seizures conducted by the United States government

5  within the United States (https://www.oyez.org/cases/1989/88-1353).

6      In later cases, such as Boumediene v. Bush, the Court used the term "United States" to

7  refer to the federal government. (Boumediene et al. v. Bush, President of the United States, et al.

8  553 U.S. 723 (2008).

9      It is important to note that the meaning and usage of these terms in various legal contexts

10  may depend on the specific statutory or constitutional interpretation and the jurisdiction

11  involved.

12      The global view taken by the Court of Appeals of the application of the Constitution is

13  also contrary to this Court's decisions in the Insular Cases, which held that not every

14  constitutional provision applies to governmental activity even where the United States has

15  sovereign power. See, e.g., Balzac v. Porto Rico, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627

16  (1922) (U.S. v. Verdugo-Urquidez, 494 U.S. 259, 268 (1990))

17

18  ## VI.    ARGUMENT

19  **Indictment Fails on Many Points—(FRCrP § 12 et seq.)**

20      This Court's jurisdiction is limited to cases arising under the U.S. Constitution or federal

21  law or cases involving diversity of citizenship. See 28 U.S.C. §§ 1331, 1332. In this case, the

22  Court lacks subject-matter jurisdiction over this dispute because all acts alleged in the Indictment

23  occurred within the sovereign states of Arizona, Colorado, and Nebraska.

24      However, there is absolutely no factual basis in any past of present sham

25  INDICTMENT's that would establish that the lawful right to travel of private non-commercial

26  use amount the several states therefore the SECOND SUPERCEDING INDICTMENT fails to

27  state a cause of action. It is common knowledge that every American citizen can travel freely

28  among the several states.

DEFENDANT'S MOTION TO DISMISS            CASE NO. 22-CR-08092-SMB

"The right of a citizen to travel upon the public highways and to transport his property thereon, by horsedrawn carriage, wagon, or automobile, is not a mere privilege which may be permitted or prohibited at will, but a common right which he has under his right to life, liberty and the pursuit of happiness. Under this constitutional guaranty one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's rights, he will be protected, not only in his person, but in his safe conduct."

(https://wearechange.org/u-s-supreme-court-says-no-license-necessary-to-drive-automobile-on-public-highwaysstreets/)

"The right of the Citizen to travel upon the public highways and to transport his property thereon, in the ordinary course of life and business, is a common right which he has under the right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety. It includes the right, in so doing, to use the ordinary and usual conveyances of the day, and under the existing modes of travel, includes the right to drive a horse drawn carriage or wagon thereon or to operate an automobile thereon, for the usual and ordinary purpose of life and business." (Thompson v.Smith, 154 SE 579, 11 American Jurisprudence, Constitutional Law, section 329, page 1135)

**THE UNITED STATES OF AMERICA LACKS STANDING—Failure to State an Offense—(FRCrP § 12(a)((3)(B)(v)**

The United States of America has no STANDING to bring a criminal action in the name of the people of the nation. The fact that the Indictment (merely opinions and conclusions) alleges a violation of a federal statute may establish subject matter jurisdiction. However, the legislative acts (statutes, codes, and rules) of Congress apply ONLY within a defined boundary territorialized as set out in Title 18 U.S.C. § 7, *supra*. If the acts herein alleged occurred **OUTSIDE** that territorial boundary, in section 7, subject matter jurisdiction does not exist. The Indictment fails to provide the factual basis of the de facto Prosecutor "United States of America," which lacks standing to bring the criminal complaint (pleas of the Crown) dating back to the Magna Carta.

1  The United States Attorney has no authority to prosecute criminal actions WITHIN the

2  territorial limits of the counties Pinal or Mohave, as both are WITHIN the sovereign territorial

3  boundaries of the state of Arizona. The rogue Assistant United State Attorney is an appointed

4  (not elected) and usurping the lawful office of the local Mojave County District Attorney.

5  **WHEREFORE**, Defendant, in error, requests for an Order striking the sham indictment

6  for lack of standing having been brought in the wrong venue and jurisdiction.

7  **UNITED STATE OF AMERICA, AMENDMENT VI—Improper Venue—(FRCrP §**

8  **12(a)((3)(A)(i))**

9  In all criminal prosecutions, the accused shall enjoy the right to a speedy and
   public trial, by an impartial jury <u>of the State and district wherein the crime shall</u>
10 <u>have been committed</u>, **which _district_ shall have been previously ascertained**[7]
   **by law**, and to be informed of the nature and cause of the accusation; to be
11 confronted with the witnesses against him; to have compulsory process for
   obtaining witnesses in his favor, and to have the Assistance of Counsel for his
12 defense. (U.S. Const. amend. VI)

13  The founders had in mind that a citizen would be tried in a specific judicial district which

14 would have been "*previously ascertained,*" meaning a certain **pre-set** defined **territorial** judicial

15 district limit. The founders were very aware of the horrors of having its citizens taken to foreign

16 jurisdictions (including England) for trial and punishment, the locations at the whim of the king.

17  In the Declaration of Independence, they declared in pertinent parts:

18  He has obstructed the Administration of Justice, by refusing his Assent to Laws
    for establishing Judiciary powers.
19

20  He has made Judges dependent on his Will alone, for the tenure of their offices,
    and the amount and payment of their salaries.

21  He has erected a multitude of New Officers, and sent hither swarms of Officers to
22  harass our people, and eat out their substance.

23  He has combined with others **to subject us to a jurisdiction foreign to our**
    **constitution**, and unacknowledged by our laws; giving his Assent to their Acts of
24  pretended Legislation:

25  For depriving us in many cases, of the benefits of Trial by Jury:

26  **For transporting us beyond Seas to be tried for pretended offenses:**

27

28  ─────────────
    [7] **Ascertained.** *pp.* Made certain ; defined ; established ; reduced to a certainty. (ASCERTAINED, Webster's 1828
    Dictionary @ ASC)

DEFENDANT'S MOTION TO DISMISS                          CASE No. 22-CR-08092-SMB

He has refused his Assent to Laws, the most wholesome and necessary for the public good.

(U.S.C.A. § DECLARATION OF INDEPENDENCE (West)

The instant action is brought in the wrong venue and jurisdiction for criminal actions.

First, there are TWO distinctly different courts. One is the District Court of the United States, created under the United States of America Constitution, and Two is the District Court of the United States.

"The term **District Courts of the United States**," as used in the rules, without an addition expressing a wider connotation, has its historic significance. **It describes the constitutional courts created under article 3 of the Constitution**. Courts of the Territories are legislative courts, properly speaking, and are not District Courts of the United States. We have often held that vesting a territorial court with jurisdiction similar to that vested in the District Courts of the United States does not make it a "District Court of the United States." (Mookini v. United States (1938) 58 S.Ct. 543, 303 U.S. 201,82 LEd. 748, at p. 205) [Underling added]

versus:

"**The United States District Court** is not a true United States court established under article 3 of the Constitution to administer the judicial powers of the United States therein conveyed.  It is created in virtue of the sovereign congressional faculty, granted under article 4, & sect; 3, of that instrument, of making all needful rules and regulations respecting the territory belonging to the United States. The resemblance of its jurisdiction to that of true United States courts, in offering an opportunity to nonresidents of resorting to a tribunal not subject to local influence, **does not change its character as a mere territorial court**." [Balzac v. Porto Rico (1922) 42 S.Ct. 343, 258 U.S. 298, 66 L.Ed. 627, at 258 U.S. 312.] [Emphasis added]

**Judicial District.**  One of the **circuits or precincts** into which a state is commonly divided for judicial purposes, **a court of general original jurisdiction** being usually provided in each of such districts, and the boundaries of the district marking the territorial limits of its authority; or **the district may include two or more counties, having separate and independent county courts**, but in that case they are presided over by the same judge. (citations) (Black's Law Dictionary 4th ed., (1968) pg. 985, col 1) [Emphasis added]

**Arizona constitutes one [federal] judicial district**. Court shall be held at Flagstaff, Globe, Phoenix, Prescott, Tucson, and Yuma. (28 U.S.C.A. § 82 (West))

There are 15 counties in the U.S. state of Arizona. Four counties (Mohave, Pima, Yavapai and Yuma) were created in 1864 following the organization of the Arizona Territory in 1862. The now defunct Pah-Ute County was split from Mohave County in 1865, but merged back in 1871. All but La Paz County were created by the time Arizona was granted statehood in 1912. La Paz County was established in 1983 after many years of pushing for independence from Yuma County. (https://en.wikipedia.org/wiki/List_of_counties_in_Arizona)

DEFENDANT'S MOTION TO DISMISS                                    CASE NO. 22-CR-08092-SMB

1   The federal judicial districts can be distinguished from the state of Arizona, which has

2   fifteen (15) counties, and Title 28, U.S.C. § 83 provides for five (5) judicial districts. The

3   specific county that the Defendant in error committed the alleged violations is the proper venue

4   for a trial of Josephine Bateman and her family's peers*.

5   * **Peer**, *n*. **1.** An equal; one of the same rank; as a man be familiar with his *peers*.
    **2.** An equal in excellence or endowments. In song he never had his *peer*. —

6   Dryden **3.** A companion; a fellow; an associate; compeer[1]. He all his *peers* in
    beauty did surpass. —Spenser. 4. A nobleman; as a *peer* of the realm; the house

7   of *peers*, called so called because noblemen and barons were originally
    considered as the companions of the king, like L. comes, count. In England,

8   persons belonging to the five degrees of nobility are all *peers*. (Webster's
    Twentieth-Century Dictionary, (1928), pg. beginning with "PEEL", col. 1)

9   * **Peer**. *n*. **1.** **An equal**; **one of the same rank**; **as a man be familiar with his**

10  **peers**. 2. An equal in excellence or endowments. (citations) (Webster's
    Twentieth-Century Dictionary, (1939) , pg. 1204, col. 3) [Emphasis added]

11

12  1. Compeer.  v.t.  **An equal**; **a companion**; **an associate**. (Webster's
    Twentieth-Century Dictionary, (1939), pg. 1204, col. 3)

13  The jury venire in the United States District Court cannot assure guarantee Josephine and

14  the Bateman family will get a fair trial by a jury of their peers[8]. The federal venue cannot ensure

15  a jury of peers will be drawn; thus, the action was brought in the wrong venue and jurisdiction.

16  The United States District Court for Arizona is an Article IV court, with criminal powers

17  only WITHIN the territories as defined in (18 U.S.C. § 7) and NOT WITHIN the territorial

18  boundary of the sovereign state of Arizona. In fact, Title 18 U.S.C. § 3231 prohibits the district

19  courts of the states from interfering with the courts of the several states, providing:

20  The district courts of the United States shall have original jurisdiction, exclusive
    of the **courts of the States**, of all offenses against the laws of the United States.

21

22  Nothing in this title shall be held to take away or impair the jurisdiction of the
    **courts of the several States** under the laws thereof.

23  (18 U.S.C.A. § 3231 (West))

24  The instant action is a classic example of the need to be tried in a local county (Mohave)

25  as Josephine Bateman, Defendant in error, and her family are ▓▓▓▓▓▓ living in a community

26

---

27  [8] Peers in this action is critically important in that the community if of the Mormon faith and having many in the
    community like the Bateman family practice polygamy so the proper venue for the Grand Jury and Petit Jury in vital

28  to a meaningful trial. For a Federal Jury to be drawn it could be from the entire state as it is all one judicial district,
    and potentially be drawn from Hispanic communities that do not know of the Mormon ways.

DEFENDANT'S MOTION TO DISMISS                                CASE NO. 22-CR-08092-SMB

where people of her faith and many of the local families are practicing polygamy. For the Federal government to bring her to trial outside her local community, to **be judged by jury members outside the area and unfamiliar with their ways would be unfair and unjust**.

WHEREFORE, Defendant, in error, requests for an Order striking the sham indictment for having been brought in the wrong venue and jurisdiction.

## NO CRIMINAL JURISDICTION

The "United States of America is a land mass and is a totally and distinctly separate territorial sovereign from the State of Arizona. Thus, no federal jurisdiction.

## NO FEDERAL-QUESTION JURISDICTION—Lacks Jurisdiction—(FRCrP § 12(b)(2)

**Federal question.** (1874) In litigation, a legal issue involving the interpretation and application of the U.S. Constitution, an act of Congress, or a treaty. • Jurisdiction over federal questions rests with the federal courts, though not necessarily exclusively. 28 USCA § 1331. (FEDERAL QUESTION, Black's Law Dictionary (11th ed. 2019))

Although the Plaintiff, in error, appears to presume that the Court has federal jurisdiction, this case does not involve a federal question.

The **district courts shall have original jurisdiction of all civil actions** arising under the Constitution, laws, or treaties of the United States. (28 U.S.C.A. § 1331 (West))

Federal question jurisdiction in 28 U.S.C.A. § 1331 clearly gives authority over "**all civil actions**."

***Expressio unius est exclusio alterius.*** The expression of one thing is the exclusion of another. Coke, Litt. 210; Broom, Max. 3d Lond. ed. 596; 2 Parsons, Contr. 28; 3 Bingh. N. C. 85; 8 Scott, N. R. 10131 1017; 5 Term, 21; 6 id. 320; 12 Mees. t W. 761; 15 id. 110; 16 id. 244; 2 Curt. C. C. 365; 6 Mass. 84; 11 Cush. Mass. 328.

***Expressio unius est exclusio alterius.*** (ek-spres[h]-ee-oh yoo-nI-əs est ek-skloo-zhee-oh al-tə-rI-əs) [Law Latin] (1826) A canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative. • For example, the rule that "each citizen is entitled to vote" implies that noncitizens are not entitled to vote. — Also termed *inclusio unius est exclusio alterius; expressum facit cessare tacitum*; negative-implication canon. Cf. EJUSDEM GENERIS; NOSCITUR A SOCIIS; RULE OF RANK. * (EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS, Black's Law Dictionary (11th ed. 2019))

The plaintiff in errors alleges the Defendant in error violated the federal **criminal** code under Title 18 U.S.C § 875(c), which provides:

> (c) Whoever transmits in interstate or foreign commerce any communication **containing any threat to kidnap any person or any threat to injure the person of another**, shall be fined under this title or imprisoned not more than five years, or both. (18 U.S.C.A. § 875 (West))

The Plaintiff's sham Indictment is merely the erroneous opinions and conclusions of the de facto prosecutor, completely void of any facts that would establish JOSEPHINE BATEMAN was subject to a federal criminal action, specifically as provided in. A federal question is limited to civil only, as pointed out *supra*.

## COUNT 54-Violation Title 18, United State Code 875(c)

> 326. On or about March 24, 2023, in the District of Arizona and elsewhere, the defendant, JOSEPHINE BARLOW BISTLINE, did knowingly and willfully transmit in interstate and foreign commerce a threat to injure the person of another: to wit, the defendant sent an electronic mail communication threatening to injure and harm C.B.
> 327. In violation of Title 18, United States Code, Section 875(c).

Josephine OBJECTS and moves to STRIKE this phrase as it is void of specific facts that would allow a plea in bar[9].

—Lacks Specificity—(FRCrP § 12(a)((3)(B)(iii)  United States code Title 18 U.S.C. § 875(c) provides in pertinent part:

> (c) Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both. (18 U.S.C.A. § 875(c) (West))

First, Count I, in pertinent part, is substantially couched in the statute's language and void of facts that a jury could examine and determine beyond a reasonable doubt that Josephine Bateman, in error, did or did not knowingly and intelligently understand her actions would *"transmit in interstate or foreign commerce."* This phrase is merely conclusory, void of any

---

[9] **Plea in bar.** (17c) A plea that seeks to defeat the plaintiff's or prosecutor's action completely and permanently. — Also termed peremptory plea. (PLEA IN BAR, Black's Law Dictionary (11th ed. 2019))

DEFENDANT'S MOTION TO DISMISS                                    CASE NO. 22-CR-08092-SMB

1   essential FACTS necessary to establish <u>the elements</u> of "traveling in interstate commerce[10]"

2   (commercially) for hire or profit or illicit gain as distinguished from the communication in

3   "intrastate commerce[11]."

4       The sham Indictment is void of facts that Josephine, her husband Samuel and family

5   committed any acts that fall within the meaning of commerce[12]. There are no facts alleged that

6   would identify the state lines which Josephine free speech communications crossed or even is

7   presumed to cross.

8       Further, the sham Indictment fails to meet the statutory requirements as required under

9   Federal Rule Criminal Procedure § 7, which provides:

10   (c) Nature and Contents.

11   (1) In General. <u>The **indictment or information must be a plain, concise,** and</u>
    <u>**definite written statement of the essential facts**</u> constituting the offense charged

12   and must be signed by an attorney for the government.

13   (<u>Fed. R. Crim. P. 7</u>) [Emphasis added]

14

15   _____

      *"On or about March 24, 2023"*

16   _____

17       Josephine OBJECT's and moves to STRIKE this phrase as it is void of specific facts that

18   would allow a plea in bar[13]. In addition, the insufficiency of this indictment raises a problem

19   described in the 9th Circuit case U.S. v. Cecil wherein the Court found:

20   <u>To allow a prosecutor or court to make a subsequent guess as to what was in the</u>
     <u>minds of the grand jury at the time they returned the indictment **would deprive**</u>

21

22   _____

     [10] **Interstate commerce.** (1843) Trade and other business activities between those located in different states; esp.,

23   traffic in goods and travel of people between states. • For purposes of this phrase, most statutory definitions include a territory of the United States as a state. Some statutory definitions of interstate commerce include commerce

24   between a foreign country and a state. — Also termed interstate trade. (<u>COMMERCE, Black's Law Dictionary (11th</u> <u>ed. 2019</u>))

25   [11] **Intrastate commerce.** (1887) Commerce that begins and ends entirely within the borders of a single state. — Also termed internal commerce. - intrastate commerce. (1887) Commerce that begins and ends entirely within the

26   borders of a single state. — Also termed internal commerce. (<u>COMMERCE, Black's Law Dictionary (11th ed.</u> <u>2019</u>))

27   [12] **Commerce.** (16c) The exchange of goods and services, esp. on a large scale involving transportation between cities, states, and countries. - e-commerce. See E-COMMERCE. (<u>COMMERCE, Black's Law Dictionary (11th ed.</u> <u>2019</u>))

28   [13] **Plea in bar.** (17c) A plea that seeks to defeat the plaintiff's or prosecutor's action completely and permanently. — Also termed peremptory plea. (<u>PLEA IN BAR, Black's Law Dictionary (11th ed. 2019</u>))

**the defendant of a basic protection that the grand jury was designed to secure**, because a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him. (Cites omitted.) U.S. v. Cecil, 608 F.2d 1294, 1297 (9th Cir. 1979) [Emphasis added]

---

"in the District of Arizona"

---

Josephine OBJECT and MOVES to strike this phrase as vague and ambiguous, void of any facts which would identify the correct venue (county) that the jury pool would be drawn from.

The United States District Court for the District of Arizona (in case citations, D. Ariz.) is the **U.S. district court that covers the state of Arizona**. It is under the United States Court of Appeals for the Ninth Circuit.

The District was established on June 20, 1910, **pending Arizona statehood** on February 14, 1912.

The United States Attorney's Office for the District of Arizona represents the United States in civil and criminal litigation in the court. As of November 2021, the United States Attorney is Gary M. Restaino.

(https://en.wikipedia.org/wiki/United_States_District_Court_for_the_District_of_Arizona) [Emphasis added]

While the United States Attorney for the District of Arizona presumes to have authority for both "civil and criminal" litigation, his ability to represent the United States in the District of Arizona, is limited to civil jurisdiction only. The criminal actions are limited to WITHIN the federal territories as defined in Title 18 U.S.C. § 7 and not WITHIN the territory or country[14] of Arizona. The District Court was established on June 20, 1910, pending Arizona statehood as noted *supra*, thus, could not have been the district contemplated by the founders in Amendment VI.

While the allegation in Count 1 in pertinent part alleges: Defendant "*did knowingly and willfully transmit in interstate and foreign commerce,*" there are no facts alleged upon which a

---

[14] Country of Oklahoma. As to the first of these grounds: It is not disputed that the district court of Kansas had, at the time of the commission of the alleged offense, jurisdiction generally of offenses against the criminal laws of the United States **committed in the country known as Oklahoma**, the place where this offense is charged to have been committed; but, on, the 2d of May, 1890, congress passed an act creating the territory of Oklahoma. 26 Stat. 81. (Caha v. U.S., 152 U.S. 211, 213 (1894))

DEFENDANT'S MOTION TO DISMISS                                    CASE NO. 22-CR-08092-SMB

1  jury could make a finding of facts that could be presented to a jury of her peers that she "did

2  knowingly and willfully transmit in interstate and foreign commerce.

---

*"and elsewhere"*

---

5      Josephine OBJECTS and moves to strike the phrase *"and elsewhere"* as it is overly broad

6  and lacks specificity. Further is void for vagueness, because it lacks specific facts that a jury

7  could determine where *"elsewhere"* is located. Because "elsewhere" is not territorially defined

8  the phrase is ambiguous and open to more than one interpretation; thus prevents Josephine make

9  plea in-bar any future charges in the same location. (FRCrP §12(b)(3)(A)(iii))

---

*"the defendant, JOSEPHINE BARLOW BISTLINE, a.k.a. JOMIE B.,"*

---

12      Josephine OBJECTs and moves to STRIKE this phrase as overly broad and vague. This

13  name may or may not refer to Josephine Barlow Bistline a.k.a. Jomie B. Nothing in the

14  INDICTMENT identifies specifically which JOSEPHINE BARLOW BISTLINE the accused

15  herein. Further, under various legal theories, a name in all caps may or may not indicate a similar

16  corporation name, a.k.a., fictional STRAWMAN.

17      Josephine OBJECTs and avers she is not presumed to be a corporation, nor a federal

18  citizen subject to the laws of the United States Title 18 U.S.C. § Section 875(c).

---

*"did knowingly and willfully"*

---

22      Josephine OBJECTs to and moves to strike the phrase *"did knowingly and willfully"* on

23  the grounds that it is vague and ambiguous. It is merely the pleader's opinion or conclusion,

24  NOT a statement of FACTS as required under FRCrP § 7. This phrase is clearly an opinion or

25  conclusion of the drafter of the sham Indictment. This clearly could NOT have been a finding of

26  a Grand Jury examining sworn witness(s) under oath. (FRCrP §12(b)(3)(B)(iii, v))

---

*"transmit in interstate and foreign commerce"*

---

DEFENDANT'S MOTION TO DISMISS      CASE NO. 22-CR-08092-SMB

Josephine OBJECTs and moved to STRIKE this phrase "*transmit in interstate and foreign commerce.*" Again, this is void for vagueness, and lacks any specific facts that a jury could find beyond a reasonable doubt what "transmit in interstate and foreign commerce" actually means in relation to facts. Further, it fails to state an offense. (FRCrP §12(b)(3)(B)(v))

---

*"a threat to injure the person of another"*

---

Josephine OBJECTs and moves to strike this vague and ambiguous phrase. There have been no facts alleging that C. B. [ C.B. ] actually received an injury in fact. Did [ C.B. ]'s get a bloody nose, or **just get her feelings hurt\***?

████████████████████████████████████

**"Sticks and Stones May Break My Bones, But Word Will Not Hurt Me"**

*Actio non datur non damnificato.* **An action is not given to him who has received no damages.** (Bouvier Law Dictionary, (1856) VOL. II, pg. 124)

*Nemo alieno nomine lege agere potest.* **No Man can sue at law in the name of another**. (Dig 50.17. 123)

The United States of America, to report to be the injured party. However, in our adversarial system of government, the adversary must be the injured party withstanding to sue. The United States of America has standing to sue civilly and not otherwise.

Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, **the plaintiff [the complainant] must have suffered an "injury in fact"**—an invasion of a legally protected interest which is (a) concrete and particularized (citations) and (b) **"actual or imminent, not 'conjectural' or 'hypothetical,' "** (citations) Second, **there must be a causal connection between the injury** and the conduct complained of—the injury has to be "fairly (citations) trace[able] to the challenged action of the defendant, **and not ... th[e] result [of] the independent action of some third party not before the court.**" (citations) Third, **it must be "likely," as opposed to merely "speculative,"** that the injury will be "redressed by a favorable decision." (citations)

(Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)) [Emphasis added]

DEFENDANT'S MOTION TO DISMISS                    CASE NO. 22-CR-08092-SMB

1

2

*": to wit, the defendant sent an electronic mail communication"*

3      Josephine OBJECTs and moves to strike this phrase as vague and ambiguous, lacks

4  specificity. Further, it fails to state facts from which the mens rea[15] could be found a necessary

5  element of a criminal cause of action. The phrase "defendant sent an electronic communication"

6  lacks specificity.

7      Was there an "official proceeding" where the Josephine defendant in error was given

8  notice of the "official proceeding? Was Josephine under any order restraining her liberty to

9  communicate with her husband Samuel and Bateman extended family? The sham

10  INDICTMENT—Lacks Specificity—(FRCrP § 12(a)((3)(B)(iii))

11

12

*"threatening to injure and harm C. B. [*    C.B.    *]"*

13      Wow, is this like? *"May You Rot in Hell"* which means *"To suffer the worst possible*

14  *punishment (likened to spending eternity in hell after death).* ***Usually used as an expression of***

15  ***one's intense anger toward someone.** "If he truly ripped off all of his elderly patients, then I*

16  *hope he rots in hell." "Deena passionately believes that her ex should rot in hell,* ***but since***

17  ***there's two sides to every story,** I'm not convinced he's pure evil."*

18  (https://idioms.thefreedictionary.com/you+rot+in+hell) [Emphasis added]

19      Or like *"What goes around comes around," "Do unto others as you would have them do*

20  *to you," "You reap what you sow,"* or *"**Karma, she'll bite you in the butt every time**."*

21      Josephine OBJECTs and moves to strike this phrase as vague and ambiguous, lacks

22  specificity. Further, it fails to state facts from which the mens rea could be found. Mens rea is a

23  necessary element of a criminal cause of action that must be found.

24

25

26

27

28

---

[15] **Mens rea.** (menz ray-ə) [Law Latin "guilty mind"] (18c) The state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime <the mens rea for theft is the intent to deprive the rightful owner of the property>. • Mens rea is the second of two essential elements of every crime at common law, the other being the actus reus. Under the Model Penal Code, the required levels of mens rea — expressed by the adverbs purposely, knowingly, recklessly, and negligently — are termed "culpability requirements." — Also termed mental element; criminal intent; guilty mind. See CULPABILITY; PURPOSELY; RECKLESSLY. Cf. ACTUS REUS. Pl. mentes reae (men-teez ree-ee). (MENS REA, Black's Law Dictionary (11th ed. 2019))

DEFENDANT'S MOTION TO DISMISS                    CASE NO. 22-CR-08092-SMB

1    Have we come to a place in this county, where a person with a *sound mind* actually takes

2    these statements (*made in righteous indignation**) toward a person **who seized her children, in**

3

4    329. On or between December 16, 2022 and March 24, 2023, in the District of Arizona and
     elsewhere, the defendant, JOSEPHINE BARLOW BISTLINE, with the intent to injure,
5    harass, and intimidate another person, used any interactive computer service and electronic
     communication service and electronic communication system of interstate commerce, and
6    any other facility of interstate and foreign commerce, to engage in a course of conduct that
     caused, attempted to cause and would reasonably have been expected to cause substantial
7    emotional distress to C.B. and L.B., and placed C.B. and L.B. in reasonable fear of serious
     bodily injury.
8

9    330. In violation of Title 18, United States Code, Sections 2261A(2) and 226l(b).

10   **bad faith, without good cause, without due process** (notice and an opportunity) to be heard or

11   the right to confront her accuser[16]; as criminal?

12          * Righteous indignation, also called righteous anger, in some Christian doctrines,
            is considered the only form of anger which is not sinful, e.g., when Jesus drove
13          the money lenders out of the temple (Matthew 21)

14          Righteous" means acting in accord with divine or moral law or free from guilt or
            sin. It may also refer to a morally right or justifiable decision or action or to an
15          action which arises from an outraged sense of justice or morality ... "Indignation"
            is anger aroused by something unjust, mean, or unworthy. The Standard
16          Dictionary describes indignation as a "feeling involving anger mingled with
            contempt or disgust."
17

18          (RIGHTEOUS, https://en.wikipedia.org/wiki/Righteous_indignation)

19          WHEREFORE, Defendant in error requests for an Order striking, the sham indictment

20   should be dismissed as to Count 54, for failing to state a cause of action.

21   **COUNT 55-Violation Title 18, United States Code § 2261A(2) and 2261(b)**

22          The statute alleged to have been violated it, Title 18 U.S.C. § 2261 provides in pertinent

23   part: (a) Offenses.--

24          (1) Travel or conduct of offender.--**A person who travels in interstate or
            foreign commerce** ... or is present within the special maritime and territorial
25          jurisdiction [18 U.S.C. §7] of the United States with the intent to kill, injure,
            harass, or intimidate **a spouse, intimate partner, or dating partner**, and who, in
26          the course of ... such travel or presence, commits or **attempts to commit a crime**

27   _____
     [16] **Accuser.** (14c) Civil & Eccles. law. Someone who accuses another of a crime. • In ecclesiastical courts, an
28   accuser cannot be a person who has been convicted of a crime, has been excommunicated, or is otherwise
     disqualified. (ACCUSER, Black's Law Dictionary (11th ed. 2019))

DEFENDANT'S MOTION TO DISMISS                                    CASE NO. 22-CR-08092-SMB

1   **of violence against that spouse**, intimate partner, or dating partner, shall be
    punished as provided in subsection (b).

2   (2) Causing travel of victim.--**A person who causes a spouse, intimate partner,**
    **or dating partner to travel in interstate or foreign commerce** or to enter or
3   leave Indian country by force, coercion, duress, or fraud, and who, in the course
    of, as a result of, or to facilitate such conduct or travel, commits or attempts to
4   commit a crime of violence against that spouse, intimate partner, or dating
    partner, shall be punished as provided in subsection (b).

5
6   (18 U.S.C.A. § 2261 (West))

7   *"Beginning on or about December 16, 2022 and continuing until on or about March 24, 2023"*

8

9          Josephine OBJECTS and moves to strike this phrase for lack of specificity. There is NO

10  specific date or dates when this travel was to have happened. As noted above the sham

11  INDICTMENT contains multiple states within the several states of the American union of state

12  and as noted above this contains no facts where a Jury of Josephine's peers could make a finding

13  as to when this as alleged to happen which prevents her from possibly having an alibi defense.

14  (FRCrP 12(b)(3)(B)(iii))

15

16  *"in the District of Arizona and elsewhere"*

17

18         Josephine OBJECTS and Moves to strike this phrase as there is no specificity. 1) The

19  "District of Arizona" is itself overly broad and vague. For example, a Google search for "*how*

20  *many districts in Arizona*" provides "Arizona has 9 congressional districts" it also lists "*twenty*

21  *(20) Arizona Department of Public Safety Districts*." 2) "and elsewhere" again overbroad and

22  vague, and lacks specificity. Further, it fails to state facts that would allow a determination where

23  the event actually occurred (locus delicti) which establishes the specific "district previously

24  ascertained" as mandated under Amendment VI. (FRCrP 12(b)(3)(A)(i), (iv))

25  ## VII.   POINTS AND AUTHORITIES

26         These rules govern the procedure in all civil actions and proceedings in the United States

27  district courts, except as stated in Rule 81. They should be construed, administered, and

28  employed by the court and the parties to secure the just, speedy, and inexpensive determination

1   of every action and proceeding. (FRCP Rule 1) **There is one form of action—the civil action**.

2   (Fed. R. Civ. P. 2) [Emphasis added]

3          But, without a cession, the U.S. has no jurisdiction: "The general rule is that a state has

4   complete jurisdiction over the land within its exterior boundaries." United States v. McBratney,

5   104 U.S. 621, 26 L. Ed. 869 (1881); People v. Martin, 326 U.S. 496, 66 S. Ct. 307, 90 L. Ed. 261

6   (1946) see Arizona v. Manypenny, 445 F.Supp. 1123 (D.Ariz. 1977). [Emphasis added]

7          In view of 40 USCS §255, no jurisdiction exists in United States to enforce federal

8   criminal laws, unless and until consent to accept jurisdiction over lands acquired by United

9   States has been filed in behalf of United States as provided in said section, and fact that state has

10  authorized government to take jurisdiction is immaterial. Adams v. United States (1943) 319 US

11  312, 87 L Ed 1421, 63 S Ct 1122.

12         Assuming that, but for this section, the state court would be without jurisdiction, we are

13  of opinion that it takes the case out of the provisions of the other sections of the Revised Statutes

14  above cited, namely, the 20th subdivision of § 629 (U. S. Comp. Stat. 1901, p. 507), and § 711

15  (**U. S. Comp. Stat. 1901**, p. 577). Sec. 5328 must be construed as creating an exception to the

16  general rule declared in these other sections in regard to the jurisdiction of the Federal courts.

17  The New York court of appeals placed the same construction on that section, in a very well

18  reasoned opinion prepared by Andrews, Ch. J., in the case of People v. Welch, 141 N. Y. 266-

19  277, 24 L. R. A. 117, 36 N. E. 328. Although § 3392 (U. S. Comp. Stat. 1901, p. 2219) is the

20  sole foundation for the creation of the offense which the plaintiff in error threatened to accuse

21  Greenwald of having committed, yet the jurisdiction of the state courts is neither taken away nor

22  impaired on that account. the state statute provides for the punishment of the crime of extortion,

23  committed as therein described, and, when the Federal statute creates the crime, the threat to

24  accuse a person of the commission of such crime becomes of itself a crime under the state

25  statute, and the Federal statute which provides for extortion does not take away or impair the

26  jurisdiction of the courts of the several states under their laws to proceed and punish as is therein

27  provided for. (Sexton v. People of State of California, 189 U.S. 319, 324 (1903)) [Emphasis

28  added]

1   In United States v. Watson, 80 F. Supp. 649 (E.D.Va., 1948), federal criminal charges

2   were dismissed, the court stating as follows: "Without proof of the requisite ownership or

3   possession of the United States, the crime has not been made out." 90 F. Supp., at 651.

4   [Emphasis added]

5   The mere ownership by the United States of land or property within the county **does not**

6   **show any federal jurisdiction over crimes committed upon it**, unless the ownership is shown

7   to have been acquired by purchase with the consent of the legislature, or under the power of

8   eminent domain authorized by the legislature. (People v. Collins (1895) 105 Cal. 504 [39 P. 16])

9   [Emphasis added]

10   The question here concerning subject-matter jurisdiction is whether the probate exception

11   to federal jurisdiction applies. The Supreme Court has instructed that a federal court has "no

12   more right to decline the exercise of jurisdiction which is given, than to usurp that which is not

13   given." Marshall v. Marshall, 547 U.S. 293, 298, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006).

14   (Hutson v. Uplands Village (S.D. Ohio, Oct. 7, 2019, No. 3:19-CV-65) 2019 WL 4928896, at

15   *2) [Emphasis added]

16   In U. S. v. Bevans, MARSHALL, C. J., said: 'The jurisdiction of a state is co-extensive

17   with its territory; co-extensive with its legislative power. The place described is unquestionably

18   within the original territory of Massachusetts. It is then within the jurisdiction of Massachusetts,

19   unless that jurisdiction has been ceded to the United States.' (Manchester v. Massachusetts

20   (1891) 139 U.S. 240, 263 [11 S.Ct. 559, 564, 35 L.Ed. 159]) [Emphasis added]

21   In Foley Bros. v. Filardo, 12 we had occasion to refer to the 'canon of construction which

22   teaches that legislation of Congress, unless a contrary intent appears, is meant to apply only

23   within the territorial jurisdiction of the United States * * * .' (U.S. v. Spelar (1949) 338 U.S. 217,

24   222 [70 S.Ct. 10, 13, 94 L.Ed. 3]) [Emphasis added]

25   This statute is one of universal application within the territorial limits of the United

26   States, and is not limited to those portions which are within the exclusive jurisdiction of the

27   national government, such as the District of Columbia. Generally speaking, within any state of

28   this Union the preservation of the peace and the protection of person and property are the

functions of the state government, and are no part of the primary duty, at least, of the nation. **The laws of congress in respect to those matters do not extend into the territorial limits of the states, but have force only in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government**. Caha v. U.S. (1894) 152 U.S. 211, 215 [14 S.Ct. 513, 514, 38 L.Ed. 415]) [Emphasis added]

We know of no other act of the state of California, through its legislature or otherwise, by which a retrocession of its sovereign jurisdiction over the Presidio military reservation has been made to the United States. The result is, the Presidio reservation is not within the exclusive jurisdiction of the United States, and the acts charged do not constitute an offense against the United States under section 5339, Rev. St., or of which this court has jurisdiction. **The indictment must, therefore, be quashed on that ground, and it is so ordered**. (U.S. v. Bateman (C.C.N.D. Cal. 1888) 34 F. 86, 90) [Emphasis added]

Although "(i)t is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction therefor," United States v. Benson, 495 F.2d 475, 481 (5th Cir.), Cert. denied, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310 (1974), Quoted in Gov't of Canal Zone v. Burjan, 596 F.2d 690, 694 (5th Cir. 1979), and thus territorial jurisdiction and venue are "essential elements" of any offense in the sense that the burden is on the prosecution to prove their existence, this Circuit has not treated territorial jurisdiction and venue as "essential elements" in the sense that proof beyond a reasonable doubt is required. Instead, it has distinguished territorial jurisdiction and venue from the "substantive elements" of an offense United States v. Turner, 586 F.2d at 397; United States v. Luton, 486 F.2d at 1022-23; Cauley v. United States, 355 U.S. at 176. (U.S. v. White (5th Cir. 1980) 611 F.2d 531, 536) [Emphasis added]

It is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction, therefore. We held in Krull v. United States, 5 Cir. 1957, 240 F.2d 122, 127, a case involving a location (Chickamauga and Chattanooga National Parks, Georgia) allegedly under the exclusive jurisdiction of the United States, that **one element of proof required of the prosecution is 'to establish the situs where (the crime was) committed**

1  and show that such situs was within the jurisdiction of the United States.' (U.S. v. Benson (5th

2  Cir. 1974) 495 F.2d 475, 481) [Emphasis added]

3        When Alabama was admitted into the union, on an equal footing with the original states,

4  she succeeded to all the rights of sovereignty, jurisdiction, and eminent domain which Georgia

5  possessed at the date of the cession, except so far as this right was diminished by the public lands

6  remaining in the possession and under the control of the United States, for the temporary

7  purposes provided for in the deed of cession and the legislative acts connected with it. Nothing

8  remained to the United States, according to the terms of the agreement, but the public lands.

9  And, if an express stipulation had been inserted in the agreement, granting the municipal right of

10 sovereignty and eminent domain to the United States, **such stipulation would have been void**

11 and inoperative: because the United States have no constitutional capacity to exercise municipal

12 jurisdiction, sovereignty, or eminent domain, within the limits of a state or elsewhere, except in

13 the cases in which it is expressly granted. (Pollard v. Hagan (1845) 44 U.S. 212, 223 [11 L.Ed.

14 565]) [Emphasis added]

15     It has been uniformly held that **the States are separate sovereigns with respect to the**

16 **Federal Government** because each State's power to prosecute derives from its inherent

17 sovereignty, preserved to it by the Tenth Amendment, and not from the Federal Government.

18 (**Heath v. Alabama (1985)** **474 U.S. 82, 82** [106 S.Ct. 433, 434, 88 L.Ed.2d 387]) [Emphasis

19 added]

20     Crimes are thus cognizable—'When committed within or on any lands reserved or

21 acquired for the exclusive use of the United States **and under the exclusive jurisdiction**

22 **thereof**, or any place purchased or otherwise acquired by the United States by consent of the

23 legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal,

24 dockyard, or other needful building'. Crim.Code, sec. 272, 18 U.S.C. s 451, Third, 18 U.S.C.A. s

25 451, subd. 3. (Bowen v. Johnston (1939) 306 U.S. 19, 22 [59 S.Ct. 442, 444, 83 L.Ed. 455])

26 [Emphasis added]

27     Congress is expressly authorized 'to provide for the punishment of counterfeiting the

28 securities and current coin of the United States and to define and punish [1] piracies and [2]

DEFENDANT'S MOTION TO DISMISS             CASE NO. 22-CR-08092-SMB

1  felonies committed on the high seas and [3] offenses against the laws of nations.' It is also

2  empowered to declare the [4] punishment of treason, and provision is made for impeachments.

3  This is the extent of power to punish crime *536 expressly conferred. (<u>Legal Tender Cases</u>

4  <u>(1870)</u> 79 U.S. 457, 535–536 [20 L.Ed. 287]) [Emphasis added]

5      When a federal statute defining an offense does not specify how to determine the location

6  where the crime was committed, the locus delicti must be determined from the nature of the

7  crime alleged and the location of the act or acts constituting it. U.S.C.A. Const.Amend. 6;

8  Fed.Rules Cr.Proc.Rule 18, 18 U.S.C.A. (U.S. v. Ramirez (2d Cir. 2005) 420 F.3d 134)

9  [Emphasis added]

10              **VIII.    CONCLUSION**

11      For these reasons, aforesaid the Josephine Bistline Bateman concludes the Court should

12  issue an Order granting defendant's Motion to Dismiss the sham First Amended Indictment for

13  failure to state a claim Fed. R. Crim. P. 12 et seq. and in the Interest of Justice issue an Order; or

14      In the alternative issue, Josephine concludes the Court should issue an Order to show

15  cause why the First Amended Indictment should not be dismissed, and the Defendant released

16  forthwith.

17      **WHEREFORE:** Josephine requests for an Order dismissing the sham First Amended

18  Indictment and releasing Josephine on in the alternative deem this motion a Petition for Habeas

19  Corpus and issue to show cause ORDER for these reasons aforesaid, good cause exists to dismiss

20  the sham indictment or in the alternative issue a show cause order why this case should not be

21  dismissed with prejudice; and

22      Requests for a show cause order why Josephine Bistline Bateman and those similarly

23  situated (like her now incarcerated FAMILY members) should not have granted her (and their)

24  Liberty forewith; and

25      Josephine Requests for an Order sanctioning the attorneys that have appeared for the

26  United States knowingly and willfully prosecuting a clear malicious prosecution action,

27  **persecuting an entire FAMLY for their constitutionally protected religious beliefs and for**

28  **their constitutionally protected rights to speak out against the oppressors** as charged in a

DEFENDANT'S MOTION TO DISMISS                    CASE NO. 22-CR-08092-SMB

non-existent (name only) sham indictment knowingly brought in the wrong venue and jurisdiction WITHIN the sovereign territory of the state of Arizona, one of the several states of the American union, and **OUTSIDE** of the territorial jurisdiction of the United States as defined in Title 18 U.S.C. &7; and

Josephine Requests for an Order granting reasonable costs (later to be itemized and filed in the record under 28 U.S.C. § 1919; and

Together with such other and further relief as the Court may deem reasonable and just under the circumstances.

Dated this **23rd** day of **Aug** 2023.

_Josephine Bistline Bateman_
Josephine Bistline Bateman
Pro Se

DEFENDANT'S MOTION TO DISMISS                    CASE NO. 22-CR-08092-SMB

STATE OF ARIZONA

COUNTY MOHAVE

### IX.    VERIFICATION

My name is Josephine Bistline Bateman. I have read the DEFENDANT JOSEPHINE

BISTLINE BATEMAN'S MOTION TO DISMISS. The facts stated in it are within my personal

knowledge and are true and correct; as to those things state on information and belief, I believe

them to be true also.

Dated this _23rd_ day of _August_ 2023.

Respectfully submitted,

*Josephine Bistline Bateman*
Josephine Bistline Bateman, Pro Se

DEFENDANT'S MOTION TO DISMISS                          CASE NO. 22-CR-08092-SMB